UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Wyandot, Inc., | Case No. 3:21-cv-1379 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| United States of America, | |
| Defendant. | |

## I.  INTRODUCTION AND STANDARD

On July 19, 2021, Plaintiff Wyandot, Inc., filed a complaint against Defendant United States of America ("Government") seeking a refund of overpaid taxes pursuant to the Internal Revenue Code (Title 26 of United States Code).  (Doc. No. 1).  On November 8, 2021, the Government filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) based on Wyandot's failure to exhaust administrative remedies prior to filing suit.  (Doc. Nos. 10 & 11).  The motion has been fully briefed.  (*See* Doc. Nos. 13 & 15).

A challenge to a court's subject matter jurisdiction falls into one of two categories: facial attacks and factual attacks.  *U.S. v. Ritchie*, 15 F.3d 532, 598 (6th Cir. 1994).  A facial attack challenges the sufficiency of the complaint's allegations to invoke federal jurisdiction.  *Id.*  "On such a motion, the court must take the material allegations of the [pleading] as true and construed in the light most favorable to the nonmoving party."  *Id.*  In contrast, a factual attack is "a challenge to the factual existence of subject matter jurisdiction."  *Id.*  On these motions, no presumption of truth is applied to the factual allegations and "the court is free to weigh the evidence and satisfy itself as to the

existence of its power to hear the case." *Id.* "In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). In either instance, the plaintiff has the burden of proving the existence of subject matter jurisdiction. *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).

## II. BACKGROUND

The Government asserts both a facial and factual attack on this Court's subject matter jurisdiction. (*See* Doc. No. 11 at 3 n.1 and Doc. No. 15 at 3 n.1). For clarity, I will summarize the facts alleged in the complaint separately from those asserted by the Government in support of its factual attack on subject matter jurisdiction.

The basis of Wyandot's complaint is the overpayment of its federal unemployment tax for the tax years of 2013, 2014, 2016, and 2017. (Doc. No. 1 at 1). It claims an entitlement to a refund because the Internal Revenue Service "failed to credit Wyandot's timely tax payments to correct periods and erroneously transferred, misapplied and/or withheld tax payments[.]" (*Id.*). Wyandot seeks a tax refund for four separate periods, totaling $238,119.95, plus interest. (*Id.* at 2).

### A. General

An employer is required to deduct and withhold income and Federal Insurance Contributions Act ("FICA") taxes from an employee's wages. 26 U.S.C. §§ 3102 & 3402(a). These withholdings are reported to the IRS on the Employer's Quarterly Federal Tax Return, Form 941. 26 C.F.R. §§ 31.6011(a)-1 & 31.6011(a)-4. The Form 941 is generally due to the IRS by the last day of the month following each quarterly tax period, *i.e.,* by April 30, July 31, October 31, and January 31. *See* 26 U.S.C. § 6151; 26 C.F.R. 31.6071(a)-1(a)(1).

Certain covered employers also owe Federal Unemployment Tax Act ("FUTA") taxes which equal a certain percentage of the total wages paid by the employer during the calendar year.

26 U.S.C. § 3301. Employers report their FUTA taxes on a Form 940 and these are generally due to the IRS by the last day of the month following each calendar year, *i.e.*, by January 31. 26 U.S.C. § 6151; 26 C.F.R. §§ 31.6071(a)-1(c) and 31.6011(a)-3.

In the case of any overpayment, the IRS may first credit the overpayment against the taxpayer's other tax liabilities and then refund any balance to the taxpayer. 26 U.S.C. § 6402(a); 26 C.F.R. § 301.6402-1. A taxpayer seeking a refund from overpayment must make the claim within three years from the time the return was filed or two years from the time the tax was paid, whichever of such periods expires later. 26 U.S.C. § 6511(a). This claim for refund must be "duly filed . . . according to the provisions of law in that regard, and the regulations of the Secretary[.]" *Id.* § 7422(a). No lawsuit can be maintained without first having filed this claim for refund administratively. *Id.*

Section 301.6402-2 of the Code of Federal Regulations outlines the procedure to properly file a claim for refund. 26 C.F.R. § 301.6402-2. A taxpayer claiming a refund must file a claim with the appropriate IRS office. *Id.* § 301.6402-2(a)(2). Also, if the IRS provides a particular form on which to claim the refund, "then the claim must be made on the form so prescribed[;]" or in all other instances, the claim for refund should be made on a Form 843, "Claim for Refund and Request for Abatement." *Id.* § 301.6402-2(c). Further, in the case of both FICA and FUTA taxes, "a separate claim must be made for each return for each taxable period." *Id.* § 301.6402-2(d).

Substantively, the claim must set forth in detail each ground upon which the taxpayer claims a refund and sufficient facts to inform the IRS of the basis of their claim. *Id.* § 301.6402-2(b)(1). The statement of the grounds and facts "must be verified by a written declaration that is made under the penalties of perjury." *Id.* A claim which fails to meet these requirements "will not be considered for any purpose as a claim for refund or credit." *Id.*

3

B.  **Complaint Allegations**

1.  2013 Form 940

Wyandot's Form 940 reported payments of $167,354.97 in FUTA taxes for 2013. (Doc. No. 1 at 2). On or about June 25, 2014, Wyandot filed an amended Form 940 for 2013 showing an overpayment of $112,132.25. (*Id.*). Wyandot alleged the IRS erroneously applied this 2013 Form 940 overpayment to Wyandot's 2014 1st quarter ("1Q")[1] Form 941 liability, despite Wyandot not having any outstanding tax liability for this quarter. (*Id.*).

2.  2014 Form 940

Wyandot's Form 940 reported payments of $139,084.36 in FUTA taxes for 2014. (*Id.* at 3). This was an overpayment of $81,102.60. (*Id.*). Wyandot alleged the IRS erroneously applied this 2014 Form 940 overpayment to Wyandot's 2011 4Q Form 941 liability, despite Wyandot not having any outstanding tax liability for this quarter. (*Id.*).

3.  Communication with the IRS regarding 2013 & 2014 Form 940 overpayments

In December 2014, Wyandot's legal counsel spoke with the IRS regarding the Form 940 overpayments discussed above. (*Id.*). "Wyandot and the IRS acknowledged that the differences in their positions centered around Form 941 tax liabilities as opposed to differences on Form 940 tax liabilities." (*Id.*). In a February 27, 2015 letter, Wyandot's legal counsel provided an analysis of Wyandot's withholding tax deposits and the IRS's alleged errors related to 15 Form 941 and Form 940 submissions from 2010 through 2014. (Doc. No. 1-1). Specifically, the letter noted overpayments for 2013 Form 940 overpayment totaling $111,504.75,[2] and its 2014 Form 940

---

[1] Going forward fiscal quarters will be designated by this shorthand.

[2] The IRS applied a tax deposit penalty of $627.50 upon this amount, reducing the overpayment to $111,504.75. (Doc. No. 1 at 3).

4

overpayment totaling $81,102.60. (*Id.* at 6). The letter requested the IRS correct its records, eliminate any penalties and interest charged, and "refund all overpayments with interest." (*Id.*).

Wyandot alleged this 2015 letter satisfied the requirements to formally claim a refund because "it was in writing, set forth the amount of tax refund sought, and informed the IRS of the basis of the overpayment and provided sufficient information to allow the IRS to examine the claim, including why Wyandot did not owe any Form 941 tax liabilities." (Doc. No. 1 at 3-4).

4. <u>2016 Form 940</u>

Wyandot's Form 940 reported payments of $75,573.77 in FUTA taxes for 2016. (Doc. No. 1 at 4). This was an alleged overpayment of $56,680.33. (*Id.*). Originally, the IRS transferred this overpayment to two accounts: $8.15 was applied to Wyandot's 2012 1Q Form 941 liability, and $56,672.18 was applied to an outstanding 2011 civil penalty. (*Id.*). In June 2017, the IRS abated the civil penalty and re-applied a portion of the overpayment, $37,077.95, to Wyandot's 2014 1Q Form 941 liability. (*Id.*). The remaining amount, $19,594.23, was refunded by check to Wyandot. (*Id.*). Wyandot alleges it did not have any tax liability for its 2014 1Q Form 941. (*Id.*).

5. <u>2017 Form 940</u>

Wyandot's Form 940 reported payments of $72,512.55 in FUTA taxes for 2017. (*Id.* at 5). This was an alleged overpayment of $55,235.52. (*Id.*). The IRS applied $8,434.65 to Wyandot's 2014 1Q Form 941 liability and refunded the remaining $46,800.87 to Wyandot. (*Id.*). Wyandot alleges it did not have any tax liability for its 2014 1Q Form 941. (*Id.*).

6. <u>Communication with the IRS regarding 2016 & 2017 Form 940 overpayments</u>

On May 30, 2018, Wyandot inquired about its accounts to the IRS. (Doc. No. 1-2 at 10). On August 8, 2018, the IRS sent a response which stated that Wyandot's Form 940 overpayments had been transferred to offset balances owed. (*See* Doc. No. 1-2 at 9). The letter referenced both

5

Form 940 & Form 941, and the tax periods ending December 31 for 2011, 2013, 2014, 2016, and 2017, and the tax period ending March 31, 2014. (*Id.*).

In a September 17, 2018 response, Wyandot's legal counsel sent a letter to the IRS entitled "Claims for Refunds" and "Request for Conference" asserting overpayments related to its Form 940s for the years of 2013, 2014, 2016, and 2017, and erroneous application of these overpayments to Form 941 liabilities for 2014 1Q, 2013 1Q, 2012 3Q, and 2011 4Q. (Doc. No. 1-2).[3] Wyandot explained its position regarding the overpayments and erroneous offset in two attachments to this letter. (*See* Doc. No. 1-2 at 7-9).

Wyandot alleged this letter satisfied the requirements to formally claim a refund because "it was in writing, set forth the amount of tax refund sought, and informed the IRS of the basis of the overpayment and provided sufficient information to allow the IRS to examine the claim, including why Wyandot did not owe any Form 941 tax liabilities." (Doc. No. 1 at 5).

7. IRS Communications

Wyandot further alleged the IRS continuously requested extensions of time to address Wyandot's claims, most recently on April 19, 2021. (*See* Doc. Nos. 1-3, 1-4, 1-5, & 1-7). As of the date of the complaint, Wyandot alleged it had not yet received a formal response to its request for refunds. (Doc. No. 1 at 6). The IRS also sent a letter on January 20, 2021, in response to U.S. Representative James D. Jordan's inquiry regarding Wyandot's outstanding issues with its alleged refunds in which the IRS explained Wyandot was not entitled to refunds due to the application of the overpayments to other unpaid tax accounts. (Doc. No. 1-6).

---

[3] The letter also references an attached Power of Attorney executed by counsel. This attachment is not included in Plaintiff's exhibit. (*See* Doc. No. 1-2).

C.  Additional Facts

Preliminarily, the Government notes that Wyandot's 2015 letter requesting refunds was not filed on the appropriate IRS form for refunds of FUTA and FICA taxes and was not sent to the correct address for filing such claims, but instead was sent to a local revenue officer in Canton, Ohio. (Doc. No. 11 at 4 n. 2; *see also* Doc. No. 1-1). Similarly, it also takes issue with the 2018 letter as noncompliant with the applicable statutory and regulatory requirements for filing tax refund claims. (Doc. No. 11 at 8-9).

1.  <u>2013, 2016, and 2017 Form 940 overpayments[4] credited to 2014 1Q Form 941</u>

In its 2015 letter, Wyandot alleged the 2014 1Q Form 941 deficiency arose because the IRS misapplied a deposit of $143,099.46 made on April 1, 2014, intended to cover Wyandot's 2014 1Q Form 941 liability to its 2013 1Q Form 941 liability. (Doc. No. 1-1 at 5). Wyandot makes no allegation that this deposit was a designated payment.[5] (*See* Doc. Nos. 1 & 1-1).

The IRS records show Wyandot filed its 2013 1Q Form 941 late on March 24, 2014,[6] but also that its 2013 1Q Form 941 account had a near-zero balance for that quarter's tax liability. (Doc. No. 11-1 at 2). Upon receipt of the $143,099.46 deposit on April 1, 2014, the IRS credited $58,504.78 to Wyandot's outstanding 2012 1Q Form 941 liability and $84,594.68 to its 2012 3Q Form 941 liability that same day. (*Id.* at 3). Because the April 1, 2014 deposit was applied to Wyandot's other outstanding tax liabilities, it left a tax due for Wyandot's 2014 1Q Form 941. This

---

[4] The IRS does not dispute that Wyandot overpaid its Form 940 taxes for the years 2013, 2016, and 2017. (Doc. No. 11 at 12).

[5] *See U.S. v. Energy Res. Co., Inc.*, 495 U.S. 545, 548 (1990) ("IRS policy permits taxpayers who voluntarily submit payments to the IRS to designate the tax liability to which the payment will apply.") (internal quotation marks omitted).

[6] The Form 941 is generally due to the IRS by the last day of the month following each quarterly tax period, *i.e.*, by April 30, July 31, October 31, and January 31. *See* 26 U.S.C. § 6151; 26 C.F.R. 31.6071(a)-1(a)(1).

liability was partially resolved by applying Wyandot's 2013 Form 940 overpayment ($111,504.75) and its 2017 Form 940 overpayment ($8,434.65). (Doc. No. 11-2 at 3 & 9; *see also* Doc. Nos. 11-5 at 2 & 11-6 at 2).

Wyandot's 2016 Form 940 overpayment ($56,672.18) was originally applied to a 2011 civil penalty assessed against Wyandot. (Doc. No. 3 at 3). But after an appeal, the IRS abated the civil penalty and transferred $37,077.95 of the 2016 Form 940 overpayment to Wyandot's 2014 1Q Form 941 account liability. (*Id.*). The IRS then refunded the balance of the 2016 Form 940 overpayment to Wyandot. (Doc. No. 1 at 4).

Through these offsets, Wyandot's 2014 1Q Form 941 liability was fully satisfied. And in fact, was overpaid, resulting in another refund to Wyandot of $9,290.91 issued on January 11, 2021. (Doc. No. 11-2 at 9).

2. <u>2014 Form 940 overpayment[7] credited to 2011 4Q Form 941</u>

In December 2014, the IRS assessed an additional tax of $68,161.58, due to Wyandot's underpayment of its 2011 4Q Form 941 taxes. (Doc. No. 11-3 at 7). It also assessed interest and penalties on the unpaid amount totaling $31,624.07. (*Id.* at 7-8). On January 31, 2015, the IRS applied Wyandot's 2014 Form 940 overpayment of $81,102.60 to its 2011 4Q Form 941 account. (*Id.* at 8). Ultimately, the IRS issued a refund from the 2011 4Q Form 941 account for $2,245.87. (*Id.* at 9). After the refund was returned undelivered, the IRS applied the refund to Wyandot's 2012 1Q Form 941 liability. (*Id.*).

### III.  ANALYSIS

"Under well-established and familiar principles of sovereign immunity, the United States may not be sued without its consent, and the terms of this consent define the jurisdiction of the courts to entertain a suit against the Government." *Stocker v. United States*, 705 F.3d 225, 230 (6th

---

[7] The IRS does not dispute that Wyandot overpaid its 2014 Form 940 taxes. (Doc. No. 11 at 14).

Cir. 2013). "[W]aivers of the immunity of the United States are construed narrowly, with any reasonable doubts resolved in the government's favor." *Agility Network Servs., Inc. v. United States*, 848 F.3d 790, 795 (6th Cir. 2017) (citation and internal quotation marks omitted).

The Government contends that Wyandot has not satisfied the conditions established to waive the Government's immunity from suit and this failure deprives the Court of subject matter jurisdiction. (Doc. No. 11 at 1). In tax refund suits, no suit can be maintained "until a claim for refund or credit has been duly filed with the Secretary . . .." 26 U.S.C. § 7422(a); *see also Worldwide Equip. of TN, Inc. v. U.S.*, 876 F.3d 172, 176 (6th Cir. 2017) (satisfaction of this administrative requirement is a jurisdictional prerequisite to suit). The Government argues Wyandot failed to exhaust its administrative remedies in two ways: (1) Wyandot did not assert a claim for refund from the appropriate Form 941 tax accounts; and (2) the 2015 and 2018 letters do not satisfy the administrative requirements for properly filing a Form 940 claim for refund. (Doc. No. 11 at 9, 11). Wyandot bears the burden of establishing subject matter jurisdiction and thus, must demonstrate administrative exhaustion. *See Madison-Hughes,* 80 F.3d at 1130; *see also Miller v. U.S.,* 784 F.2d 728, 729 (6th Cir. 1986).

### A. To properly exhaust the administrative remedy, Wyandot was required to claim a refund from its Form 941 accounts and not the Form 940 accounts as pled

"The statute and case law are clear that the IRS has discretion to credit an overpayment to any pre-existing tax liability of a taxpayer." *Oppenheim v. U.S.*, No. 07-852, 2009 WL 586118, at *5 (Fed. Cl. March 5, 2006); *see also id.* (collecting cases affirming the IRS's discretionary authority under 26 U.S.C. § 6402(a)). "Therefore, an overpayment does not necessarily create a debt due to the taxpayer because that entity has no right to its overpayment until after the IRS has exercised its discretionary powers under 26 U.S.C. § 6402(a) and Treas[ury] Reg[ulation] § 301.6402–1." *U.S. Dep't of Agric. Rural Hous. Serv. v. Riley*, 485 B.R. 361, 365 (W.D. Ky. 2012).

9

Pursuant to 26 U.S.C. § 7422(d), "[t]he credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability at the time such credit is allowed." In other words, once the IRS applies the overpayment to another tax liability, the credit becomes a payment to the deficient account. Thus, "when the IRS applies an overpayment as a credit to a liability for a separate tax year, the taxpayer must file a refund claim for the year in which the IRS applied the credit." *Greene-Thapedi v. U.S.*, 549 F.3d 530, 532 (7th Cir. 2008).

The *Greene-Thapedi* case is instructive. Greene-Thapedi sought a refund of an overpayment of her 1999 income tax that the IRS had applied to a tax deficiency from 1992. *Id.* at 531. The Seventh Circuit vacated the district court's decision on the merits finding that it lacked subject matter jurisdiction to hear the case. *Id.* at 532. The court explained:

> Under § 7422(a) of the Internal Revenue Code, a district court lacks jurisdiction over a refund claim that has not been filed with the IRS. Under § 7422(d), when the IRS applies an overpayment as a credit to a liability for a separate tax year, the taxpayer must file a refund claim for the year in which the IRS applied the credit. After the IRS applied Ms. Greene-Thapedi's overpayment to the 1992 taxable year, the case became a suit for a 1992 refund because it centered on an adjudication of her remaining 1992 tax liability. Ms. Greene-Thapedi recognized that the dispute regarded the 1992 tax year. . . . Ms. Greene-Thapedi, however, never filed an administrative claim for the 1992 taxable year.

*Id.* at 532-33.

Similarly, here, after the IRS applied the 2013, 2014, 2016, and 2017 Form 940 overpayments to Wyandot's Form 941 tax liabilities, "the case became a suit for a [Form 941] refund because it centered on an adjudication of [Wyandot's] remaining [Form 941] tax liability." *Id.*; *see also, e.g., Waltner v. United States*, No. 18-cv-1163, 2019 WL 176800, at *5 (D. Ariz. Jan. 11, 2019) ("To provide fair notice to the IRS of his claim that he did not owe 2008 taxes, and that his 2016 overpayment was therefore improperly applied to 2008 and should be returned to him, Waltner was required to file an administrative claim for [2008]."); *Carr v. United States*, No. 20-cv-744, 2020 WL 4584193, at

10

*2 (N.D. Cal. Aug. 10, 2020) ("Therefore, any payments allegedly made by Carr for the 2010 tax year that were then transferred as credits to her 2012 tax year must be recovered, if at all, through her 2012 refund claim.").

This outcome is supported by the allegations in the complaint. It is undisputed that Wyandot overpaid its Form 940 taxes for 2013, 2014, 2016, and 2017. (*See* Doc. No. 1 at 2-5; Doc. No. 11 at 12, 14). It is also alleged, and undisputed, that instead of refunding those overpayments, the IRS took some or all those amounts and applied them to Wyandot's other alleged outstanding tax liabilities. (*See* Doc. Nos. 1 at 2-5 & 11 at 12). What is in dispute is whether Wyandot actually had outstanding 2014 1Q and 2011 4Q Form 941 tax liabilities.

Wyandot admits as much in its complaint. (Doc. No. 1 at 3) ("Wyandot and the IRS acknowledged that the differences in their positions centered around Form 941 tax liabilities as opposed to differences on Form 940 tax liabilities."); (*see also id.* at 2-5) (alleging the IRS's application of overpayment is in error because Wyandot does not have any Form 941 tax liability for those periods).

Even accepting Wyandot's allegations that it did not have Form 941 tax liabilities for those periods as true, it does not alter the undisputed fact the IRS applied the overpayments to those accounts. Thus, pursuant to § 7422(d) and *Greene-Thapedi*, the Form 940 overpayments had been converted into Form 941 tax payments and thereby ceased to exist as "overpayments." Once transferred, the appropriate remedy was to seek a refund from the account to which the IRS *applied* the overpayment, rather than from the *source* account of the overpayment. Despite this, there are no allegations in the complaint, and Wyandot does not argue in its opposition, that it ever sought a refund, formally or informally, from a Form 941 tax account. (*See* Doc. Nos. 1 & 13).

In fact, the complaint explicitly seeks recovery from "overpayments made by Wyandot of its federal unemployment tax withholding reported in its Form 940s for tax years 2013, 2014, 2016, and

11

2017." (Doc. No. 1 at 1). Further, Wyandot alleged its administrative claims for refund sought tax refunds from the Form 940 accounts. (*Id.* at 3-5) (e.g., "In a letter to the IRS . . . Wyandot through its legal counsel requested tax refunds for the tax periods December 31, 2013 Form 940 . . ., and December 31, 2014 Form 940 . . . .").

Thus, based on the complaint, I conclude Wyandot has failed to sufficiently allege an administrative claim for refund for the 2014 1Q and 2011 4Q Form 941 accounts which are in dispute. Because exhaustion of administrative remedies is a jurisdictional prerequisite to this Court's subject matter jurisdiction, *Worldwide Equip.*, 876 F.3d at 176, this case will be dismissed unless I find that Wyandot meets one of the exceptions to formal administrative exhaustion. *See Shields v. United States*, 136 Fed. Cl. 37, 45 (Fed. Cl. 2018) (citing *Computervision Corp. v. United States,* 445 F.3d 1355, 1363-64 (Fed. Cir. 2006)).

### B.  No exception to the formal requirements to file a claim for refund applies

There are four well-recognized exceptions "to the requirement that a taxpayer must file a formal, detailed claim for [a] court to have subject matter jurisdiction over the taxpayer's tax refund suit." *Computervision*, 445 F.3d at 1363-64. "Collectively, 'this aggregation of rules has come to be known as the substantial variance doctrine[,]'" *Shields*, 136 Fed. Cl. at 45 (quoting *Computervision*, 445 F.3d at 1363-64), and these rules allow taxpayers to exhaust their administrative remedies by means other than a formal claim. Wyandot argues the waiver exception applies in this instance to satisfy its administrative exhaustion prerequisite to suit. (Doc. No. 13 at 4-5).

Under the waiver exception, where the IRS rules on a specific claim for relief, even if it was not properly raised in the administrative claim, it has waived the need for the taxpayer to formally comply with the IRS regulations governing proper form of a tax refund claim. *Shields*, 136 Fed. Cl. at 45 (quoting *Computervision*, 445 F.3d at 1365). Importantly, "the mere failure of the IRS to object to a variance will not satisfy this standard[,]" nor will "evidence that the IRS investigated the facts

surrounding the claim [ ] alone support a waiver." *Friedman v. U.S.*, 107 F. Supp.2d 502, 507 (D.N.J. 2000) (citing *Salyersville Nat. Bank v. U.S.*, 613 F.2d 650, 652 (6th Cir. 1980)).

Waiver applies when: "(1) there is clear evidence that the [IRS] understood the claim that was made, even though there was a departure in form in the submission; (2) it is unmistakable that the [IRS] dispensed with the formal requirements and examined the claim; and (3) the [IRS] took action upon the claim." *Brown v. United States*, 22 F.4th 1008, 1013 (Fed. Cir. 2022) (citing *Angelus Milling Co. v. Comm'r,* 325 U.S. 293, 297-98 (1945)).

Wyandot relies on the two letters it sent to the IRS in 2015 and 2018 to show that the IRS was on notice of its specific requests for refunds. (Doc. No. 13 at 5-7).[8] Wyandot further argues these letters sufficiently identified its theory of recovery to the IRS. (*Id.* at 6) (quoting Doc. No. 1-1 at 7) (In 2015, Wyandot requests: "The [IRS] refund all overpayments with interest."); (*see also* Doc. No. 1-2 at 1-3) (e.g., in 2018, "Wyandot's position as to Claims for Refunds is as follows: Refund due for Form 940, December 31, 2013").

As to an IRS examination of the claim, Wyandot cites to a January 20, 2021 letter from the IRS to U.S. Representative James D. Jordan regarding Wyandot's tax liability. (Doc. No. 13 at 7). Wyandot argues the IRS made an adjudication as to Wyandot's claim:

> Based on our review, we determined that Wyandot Inc. is not entitled to receive a refund of $257,722.33 because it incorrectly applied payments and owed for older tax forms and periods.

(*Id.*) (quoting Doc. No. 1-6 at 1). Wyandot argues the use of "determined" is conclusive of the fact that the IRS waived the formalities of the claim and addressed the merits. (Doc. No. 13 at 7-8).

At the outset, I note that neither the 2015 nor the 2018 letter serve to put the IRS on notice of Wyandot's actual claim – a refund of payments from Form 941 tax liabilities. *See supra* at 9-12; *see*

---

[8] Wyandot argues its claims were timely submitted to the IRS but the complaint does not include the specific dates upon which the returns were filed or when the tax was paid. For the purposes of this motion only, I will assume that the 2015 and 2018 letters were timely submitted.

13

*also Brown*, 22 F.4th at 1013 (for waiver to apply, there must be "clear evidence" that the IRS understood the claim that was made). Instead, each letter explicitly seeks refunds from Form 940 overpayments. (*See* Doc. No. 1-1 at 7) (In 2015, Wyandot requests: "The [IRS] refund all overpayments with interest."); (*see also* Doc. No. 1-2 at 1-3) (e.g., in 2018, "Wyandot's position as to Claims for Refunds is as follows: Refund due for Form 940, December 31, 2013").

But "[c]ourts are reluctant to find that a refund request for one year can include another, unlisted, year." *Hassel Fam. Chiropractic DC PC v. United States*, No. 4:15-CV-145, 2016 WL 8542539, at *11 (S.D. Iowa Dec. 5, 2016); *see also Cencast Servs., L.P. v. United States*, 94 Fed. Cl. 425, 447 (Fed. Cl. 2010) ("Because plaintiffs chose to file an administrative refund claim setting forth certain grounds and omitting others, the IRS rationally concluded that the claims asserted by plaintiffs, and only those claims, were the issues plaintiffs had chosen to litigate.").

Thus, it must be shown the IRS examined Wyandot's 2015 or 2018 letters as claims for refund from Form 941 tax liabilities. But the IRS communications attached to Wyandot's complaint demonstrate that it reviewed Wyandot's claims as those for refunds of Form 940 overpayments, while at the same time assuming its calculations of Wyandot's Form 941 unpaid tax liabilities were accurate. (*See, e.g.,* Doc. No. 1-2 at 9 ("We have transferred the overpayments you referenced to offset balances due from penalties on other tax periods."); Doc. No. 1-6 at 2 ("The tax law requires us to apply overpayments or available credits to any unpaid tax accounts before issuing refunds.")). While Wyandot's 2015 and 2018 letters reference Form 941 accounts, "[i]t is not enough that in some roundabout way the facts supporting the claim may have reached [the IRS]. [The IRS's] attention should have been focused on the merits of the particular dispute." *Angelus*, 325 U.S. at 297-98; *see also Bear Valley Mut. Water Co. v. Riddell,* 493 F.2d 948, 953 (9th Cir. 1974) ("The very point of the regulation is to promote orderly tax administration by requiring taxpayers to

14

focus attention on the dispositive issues at the beginning of the process of administrative review, rather than requiring the Service to gradually sort out the legal basis for claims presented to it.").

Here, the particular dispute is that Wyandot's alleged Form 941 account deficiencies resulted from improper application of payments. (*See* Doc. No. 1-6 at 2) ("Mr. Wentz explained his account for the tax period ending March 31, 2014 (Form 941 Employer's Quarterly Federal Tax Return) was underpaid because the IRS incorrectly applied a deposit."). But the complaint does not allege, and no evidence was cited, that demonstrates Wyandot's payments were designated for certain tax periods or liabilities. (*See* Doc. No. 1-6 at 2) ("However, when using the [electronic filing system], the **user** designates the tax period and form for which the IRS applies the payment.") (emphasis added). "Because the plaintiff did not designate in writing how it wanted its payments allocated, the IRS had every right to allocate the payments to the maximum benefit of the United States." *Norwalk Liquidating, Inc. v. U.S.,* 159 F. Supp. 2d 684, 693 (N.D. Ohio 2001).

It is evident from the allegations in the complaint and accompanying exhibits that Wyandot understood the IRS's conclusion regarding the Form 940 overpayments, *i.e.*, that they were applied to other unpaid liabilities. (Doc. No. 1 at 2-5). Despite this, Wyandot never amended their administrative claims to reflect a proper request for Form 941 refunds, and even persists in alleging its claim for refund is for Form 940 overpayments. (*See* Doc. No. 1); *see also Friedman*, 107 F. Supp. 2d at 509 (declining to apply waiver where "it is reasonable to assume that the Plaintiffs understood and appreciated the nature of their original refund claim. It would have been a simple matter for the Plaintiffs to amend their refund claim to include the allegations in Count Two. They did not.").

Wyandot further argues the January 2021 letter to Representative Jordan demonstrates that the IRS addressed the merits of its claims and waived the requirements that it follow the formal claim procedure. In support of this conclusion, Wyandot analogizes two cases. (Doc. No. 13 at 8-9) (discussing *Blue v. United States,* 108 Fed. Cl. 61 (Fed. Cl. 2012) and *Harper v. United States*, 847 F.

15

App'x 408 (9th Cir. 2021)). In both cases, the court denied the government's motion to dismiss finding that the IRS had waived the formalities for filing a claim by processing the taxpayer's claims in the same manner it would have done if the claim had been properly filed. *See, e.g., Blue*, 108 Fed. Cl. at 69 ("[I]t appears that the IRS treated Plaintiff's Request for Appeal as a claim for refund and administratively processed it as such."); *Harper*, 847 F. App'x at 410 ("The IRS's targeted investigation and final determination unmistakably demonstrates that it understood Taxpayer's claims and the exact basis thereof.") (internal quotations omitted).

Upon review, I do not find Wyandot's argument persuasive. First, I cannot agree that a letter sent to a third party, who is without authority to act on behalf of Wyandot for purposes of its tax liabilities, is an "unmistakable showing that the [IRS] has in fact [seen] fit to dispense with [the] formal requirements and to examine the merits of the claim." *Harper*, 847 F. App'x at 410 (internal quotation marks omitted).

The Treasury Regulations outline numerous ways in which a person other than the taxpayer may represent the taxpayer before the IRS,[9] but Wyandot makes no allegations or argument to support a claim that it satisfied any of those processes with respect to Representative Jordan. (*See* Doc. Nos. 1 & 13); *see, e.g., Maese v. C.I.R.*, 1996 WL 904759, at *1 (N.D. Cal. Oct. 18, 1996) ("To represent taxpayers, one must qualify either as a 'fiduciary' or as a 'recognized representative.'"); *Dixon v. United States*, 147 Fed. Cl. 469, 474-75 (Fed. Cl. 2020) (dismissing refund suit for lack of subject matter jurisdiction for failure to follow administrative regulations, including submitting

---

[9] For example, § 601.504(a)(1) states that "a power of attorney is required by the [IRS] when the taxpayer wishes to authorize a recognized representative to perform [representation] on behalf of the taxpayer." 26 C.F.R. § 601.504(a)(1). Representation is "acts performed on behalf of a taxpayer by a representative in practice before the [IRS]." *Id.* § 601.501(b)(13). Practice before the IRS is defined as "all matters . . . relating to a taxpayer's rights, privileges, or liabilities . . . such presentations include . . . correspondence with and communication to the [IRS] . . . ." *Id.* § 601.501(b)(10). *See also* 26 C.F.R. §§ 601.501 *et seq.*.

16

proper proof of power of attorney or other agency authorization with claim). I conclude the IRS's January 2021 letter is nothing more than a courtesy response to an elected representative's "inquiry . . . on behalf of [his] constituent, Mr. Robert Wentz, C.F.O of Wyandot Inc." (Doc. No. 1-6 at 1).

Second, the January 2021 letter does not have the indications of full review and finality that were found to be important for waiver in *Blue* and *Harper*. For example, in both cases the IRS communications invited the taxpayer to seek judicial review of its decision, indicating its administrative review of the matter was complete. *See Blue*, 108 Fed. Cl. at 69 ("The letter also stated that the law permits Plaintiff to file a claim 'for the recovery of any tax . . . by filing suit . . . with the United States Court of Federal Claims . . . within 2 years from the mailing date of this letter.'"); *Harper*, 847 F. App'x at 410 ("The direction to bring suit in case of disagreement is a strong indication of the IRS's understanding that it was making a substantive determination."); *see also Salyersville Nat. Bank*, 613 F.2d at 652 ("In each case where waiver was found, there was some affirmative conduct indicating a willingness to litigate the issue."). No such indication is found in the January 2021 letter.

Aside from the January 2021 letter, Wyandot does not argue any of the other communications from the IRS was an adjudication of its claim for refund. (*See* Doc. No. 13 at 7); (*see also* Doc. No. 1 at 6) ("To date, the IRS has yet to provide Wyandot with a formal response to Wyandot's request for tax refunds."). Yet, the explanation in the January 2021 letter that Wyandot was not entitled to a refund because the overpayments were used to satisfy other tax liabilities, had previously been communicated to Wyandot on August 8, 2018, by the IRS. (*See* Doc. No. 1-2 at 9). There the IRS stated:

17

> We have transferred the overpayments you referenced[10] to offset balances due from penalties on other tax periods. Overpayments are offset to balances owed before any refunds can be issued. The accounts are paid in full at this time.

(*Id.*).

But reliance on this communication as evidence of waiver comes with its own issues. First, and like the January 2021 letter, there is no indication that the IRS had made an adjudication. (*See* Doc. No. 1-2 at 9). Specifically, the letter offers Wyandot the opportunity to respond to or pose questions about the IRS's conclusion, a clear indication that the administrative process was still ongoing. *Id.* And in fact, Wyandot did inquire further by sending another letter to the IRS on September 17, 2018. (Doc. No. 1-2). Further, the letter does not contain any language suggesting that Wyandot could seek judicial review of this conclusion. *Id.*

Second, if the IRS's August 2018 letter is the basis of the waiver exception, it triggers a statute of limitations issue. Section 6532(a) requires that a suit for refund be brought within "2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceedings relates." In that case, Wyandot's instant suit filed on July 19, 2021, is barred by the statute of limitations.

Accordingly, I find that waiver does not apply. Wyandot has failed to carry its burden of establishing that an exception to formal administrative exhaustion applied in this case. *See Madison-Hughes,* 80 F.3d at 1130; *see also Miller,* 784 F.2d at 729. Administrative exhaustion is a jurisdictional prerequisite to maintaining a tax refund suit against the United States. *See* 26 U.S.C. § 7422. Due to this failure, Wyandot cannot establish that the government waived its sovereign immunity. *See Agility Network Servs.,* 848 F.3d at 795 ("[W]aivers of the immunity of the United States are construed

---

[10] This communication identified the 2013, 2014, 2016, and 2017 Form 940 tax periods, as well as the 2014 1Q Form 941 and 2011 4Q Form 941 tax periods. (Doc. No. 1-2 at 9).

18

narrowly, with any reasonable doubts resolved in the government's favor."). And thus, I must dismiss this case for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, I grant the Government's motion to dismiss the case for lack of subject matter jurisdiction. (Doc. Nos. 10 & 11).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge